State Farm Fire and Casualty, 23-14081. Mr. Weinshall, when you are ready, you may again receive a reserve of some time for rebuttal as well. Thank you, Your Honor. May it please the Court, Matthew Weinshall on behalf of the appellants, the Pearces. This case arises from a nationwide uniform practice of State Farm Mutual and State Farm Fire refusing to reimburse policyholders like the Pearces despite contractual language requiring them to do so for premiums paid on inflated insured values of personal items as compared to the lower replacement value that gets paid out when there is a loss. The District Court made several separate errors in dismissing State Farm Mutual, State Farm Fire and State Farm Florida, all of which require reversal. As to Mutual, the District Court failed to consider the agency theory that plaintiffs pled and rejected it out of hand based on a misreading of Florida case law. State Farm does not even defend the District Court's rationale. It also refused to permit plaintiffs to plead an unjust enrichment claim in the alternative after concluding that plaintiffs did not have a contract with State Farm Mutual. That was also contrary to Florida law. As to State Farm Fire, the contractual language indicated that State Farm Fire was bound by the contractual based on the signature block and the articles of incorporation of State Farm Fire. The District Court simply refused to give effect to that language calling it awkward and moved on. That was in conflict with Florida law. Finally, as to State Farm Florida, even if the first two arguments as to State Farm Mutual and State Farm Fire were rejected, the District Court had subject matter jurisdiction over the claims against State Farm Florida because subject matter jurisdiction is determined at the time the operative complaint is filed. At the time the operative complaint was filed, State Farm Fire and State Farm Mutual were included and the amount of controversy exceeded $5 million. The arguments that State Farm Florida makes regarding the amount in controversy only concern State Farm Florida claims. They don't dispute that more than $5 million is in dispute if the claims against the other entities are included. I will turn each of those errors in order unless the court wishes for me to focus on one in particular. Let me just sort of tee up some of the... Let's start with State Farm Mutual. When I look at the contract, the only entity that I see mentioned other than your clients is State Farm Florida in the documents that are there for the record. It's my understanding that you are claiming that State Farm Mutual, which is the big State Farm, because the big State Farm, State Farm Mutual, has provided... Its logo, it is preparing some of the, I guess, the underlying contract documents, but the signature of State Farm Mutual or the name of State Farm Mutual is not appearing in the documents. How do you get around the Florida Supreme Court's case in Mobile that holds that just saying that State Farm Mutual is providing logos, that's not enough? Right. Well, first of all, I think State Farm Mutual, that name actually does appear at page 25-1 at 162, which is... That's this court's docket number, and also 51-1 at 17, which says State Farm Mutual copyright on the bottom. We argue that all the State Farm registered trademark references, which are throughout that document, especially on the very first page of that document, it says go to statefarm.com. Those are all references to State Farm Mutual because the complaint alleges that State Farm Mutual is the one that controls those trademarks and controls the operation of the business. Now, the Mobile case said that just simply using trademarks by itself is insufficient, but if you give indications of control of the principle over the agent, then agency can exist. Of course, that contract itself points people to State Farm's actual website. There's representations that are made in paragraphs 36 and 37 talk about marketing that when people buy these contracts, they don't think they're contracting with some small Florida entity. They think they're contracting with Jake, the State Farm agent, who is going to appear anytime there's an issue. Those representations, but also the actual operation of this insurance business indicates to policyholders that State Farm, the company based in Illinois, is actually controlling the process. I think the case is more similar to the Ilgen v. Henderson Properties case in which there was not just a logo that appears at a franchised gas station, but actually the logo appears on a contract and says you are buying this principal's designed home. Same thing happens here. It says you are buying the State Farm policy, not just the State Farm Florida policy, but it says State Farm, the big logo, registered trademark policy. It's also more similar, I think, to the Marchiso v. Carrington Mortgage Services case out of this court, which applied the Almerico case from the Florida Supreme Court, which is after the Mobile case. The Almerico case applies specifically in the insurance context and provides that when a principal gives its agent documents that bear its logo, and it's not just simply the logo on a door, but actually the logo on a contract and on these forms, that can give rise to apparent agency. The problem is the district court never considered any of this. The district court simply misread Cohen's organization case as saying apparent agency cannot exist at all. There's a friend of State Farm that argues this court should adopt that view of apparent agency, but it cites no authority. Your rule is pretty loose or broad. I recognize we're only supposed to address the case that is before us, but if we adopt your standard, isn't that equivalent to a floodgate? Any time a progressive or GEICO, the national, has its logo on an affiliate contract, that means that they now have apparent agency authority? No. I think, as in the American International Group case, the Cornerstone Business case, those companies can put into their contracts clear language saying, you are not contracting with Progressive, the home company. You are contracting with Progressive of Florida. If that's what they want, and they want to disclaim any apparent agency relationship there, they can make that very clear to people. Wouldn't they say, in this case, we have nothing in here that says you're not only contracting with State Farm Florida, you're also contracting with State Farm Mutual? In fact, McFadden is one of the signatories, and he is president only of State Farm Florida. So what, other than logos and copyright, what exactly is allowing us to say the State Farm Mutual has made a representation that it, in fact, has this agency relationship as it applies to the contract? I'd say, if you look at page, at even what they're calling the renewal certificate, it points to the statefarm.com website. It's not the State Farm Florida website. It's the statefarm.com website to get information on the policy, the way the policy operates, and that's because State Farm actually does exercise control over the operation of this business. But you also, Your Honor, pointed to the signature block, and that moves us to State Farm Fire. And State Farm Fire is the only company that meets the definition of this company. Now, that language is very clear, and the Florida cases that we cited say you have to give effect to a signature block. Now, even though Mr. McFadden may say, I'm not affiliated with that company, we know Lynn Yowell is, and the signature of one agent was sufficient under the terms of that contract to bind State Farm Fire. So even if the we reference early on in the policy only can relate, as they say, to State Farm Florida, that doesn't mean that State Farm Fire is not also bound by the contract. Okay, let's look at this. You keep calling this the signature block. So we have an in witness where the company has executed and attested these presence, and we have two signatures. We have a secretary and a president. Under that signature block, it says the Board of Directors, in accordance with Article 6C of this company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said company such sums out of its earnings. So there's this language that doesn't seem to track with anything that's going on in the contract. It follows the signature blocks. It does not mention State Farm Fire. And in fact, I understand from the record that you went out and determined which State Farm entity actually had that article in the Articles of Incorporation. Otherwise, I see no reference to State Farm Fire in this group. And that's right, Your Honor. And that is exactly the type of latent ambiguity that Florida courts say you have to look to this extrinsic evidence like the Articles of Incorporation to determine. And this company, that phrase, this company, which with the demonstrative determiner of this, only appears twice in the contract. Once this company right above the signature block, this company right below the signature block. And this company can only refer to one company. And if State Farm, and the reason I think it appears here is because State Farm Fire generally is the one that issues these policies. If State Farm Florida didn't want to bind or State Farm Fire did not want to bind itself to these contracts, it shouldn't have said this company. This company has to have a meaning. And that meaning is only State Farm Fire under the evidence that we've alleged in the complaint and they haven't even disputed. So there is no way to read that contract and give effect to what this company means other than it being State Farm Fire. And even if those arguments failed, the court should not have dismissed the unjust enrichment claim against State Farm Mutual because the company was not bound by the contract under the district court's reasoning and we should have been permitted to proceed with the claim against State Farm Mutual. So State Farm would argue that if we accept your agency theory, we would be essentially allowing veil piercing by another name in insurance disputes because parent companies always provide full contracts to their subsidiaries. Is that accurate? I don't think so, no. They can make their contracts clear and say, you are not contracting with State Farm, the parent company. They don't do that. Why? Because they want people to think, yes, you are being protected by Jake. Jake is going to appear when something goes wrong. Now, they're benefiting from the big State Farm umbrella. But if they want to make it clear, you are not contracting with State Farm Mutual, you are only contracting with State Farm Florida, they can do that. They don't have any language in the contract that clearly says that. They just said something defining we. That doesn't say there isn't another company that's involved here. And then they have the signature block. And they have the representations that we've alleged in the complaint. At a minimum, this should be something that goes to a jury or at least there's discovery taken. It shouldn't be thrown out based on a misreading of Florida law. So this is your alternative theory and I see you're out of time. So just quickly on controversy. You pled $5 million. State Farm comes back showing only $3.5 million. Just to be clear, your argument is that the difference is related to the parties that are included in reaching that amount. That's right, Your Honor. So they've said there's only $3.5 million of policies that were written in Florida by State Farm Florida. They have not said there's only $3.5 million in policies written by State Farm Fire and State Farm Mutual across the whole country, which is what the class that we've alleged is. That's much, much larger, well in excess of $5 million. And they haven't disputed that. And under a binding case law, that's sufficient to get CAFA jurisdiction. CAFA jurisdiction attaches to the claims at the time of filing the complaint, not after a dismissal of parties. If we disagree with your theory of apparent agency, in light of the CAFA jurisdiction issue, would we send it back to the district court to determine if the claims were frivolous? Yeah, that would be the exception, I think, to CAFA jurisdiction would be if the claims are frivolous. I don't think they are. I think, you know, based on the Ilgen case, based on this court's case, the Machizo case, I mean, again, I think there'd have to be pretty fine distinctions drawn between those cases and this case, because those cases were about logos and the use of documents provided by the parent companies, and the absence of language in those contracts distinguishing between the principal and the agent, which is what we have here. So I don't think it's frivolous. I think if the court were to find that it doesn't exist, then I think the court could also make the determination it's not frivolous either and retain jurisdiction. I guess now thinking more about it, I think this court probably has to determine for itself if it has jurisdiction based on CAFA, maybe even before determining the appeal. Is this an issue we should be certifying to the Florida Supreme Court? I think Florida law is pretty clear based on the Almerico case, which is a Florida Supreme Court case, which says that providing these sorts of documents with a principal's name on it can give rise to apparent agency liability. So I don't think there's really ambiguity in Florida law on that issue. On the issue of signatories and signature blocks, again, we haven't seen any contrary authority from the other side that signature blocks must be read when there's dispute about extrinsic evidence about who is actually a person. That can be considered. And obviously, jurisdiction, that's for this court. So I don't think there's a need, but of course, I would defer to this court's judgment. Thank you, Your Honor. Thank you, Your Honor. You may proceed. Why don't you jump right into Almerico, which is a Florida Supreme Court case, which holds that evidence of indicia of agency may be demonstrated if the insurer furnishes an insurance agent or agency with any liability. The Almerico case, I guess let me introduce myself. May it please the Court, Brian West for Defendants Appellee State Farm Florida Insurance Company, State Farm Mutual Automobile Insurance Company, and State Farm Fire and Casualty Company. With respect to the Almerico case, that was a case that was narrowly dealing with issues under a statute dealing with independent insurance agents. And that statute is not at play in this case, so it has no bearing on the fact pattern we have here where we have affiliated companies where they're trying to hold one affiliated company liable for an insurance policy by another company. And then by extension, the Marchisio case applies that. In those cases, the issue was that the agent put the name of the other entity as the insurer, and therefore we don't have that in this case. We have the situation where the insurer that is in the document is State Farm Florida. So there's not a situation where State Farm Florida as an agent put in the name State Farm Mutual, I am hereby giving you a policy for State Farm Mutual. So those cases don't apply. So why, I'm guessing, did you also agree that Florida law is clear, but clear to your side of the argument? We do, Your Honor. We believe that application of the basic Florida Supreme Court rules on insurance contract interpretation, when they're strictly applied here, lead to the conclusion that the only insurance company that insured the Pierce's under this personal articles policy was State Farm Florida. So those principles are pretty straightforward, and we'll ask the court to apply them here, but the district court was correct in its interpretation of the policy that was before the district court. And in particular, the insurance principles that need to be examined by, under the standard articulated by the Florida Supreme Court, is what matters is the salient language of the policy. In this case, that's dealing with the insurance of the Pierce's jewelry and their premium payment, and that's the only salient language that's really at issue here. The principle that there must be a genuine inconsistency, that the policy must be viewed as a whole, that specific language governs over the general, and interpretation should not lead to absurd results. And applying all those basic Florida Supreme Court principles to insurance policy construction will lead to the conclusion that the only insurance company that insured the Pierce's here was State Farm Florida. And that's... How do you know in your Ilgen case? The Ilgen case had different facts than our case. In the Ilgen case, there was a situation where there was representations by the principle that they would control the performance of the work over the home that was contracted for. And that was the situation where the plaintiffs pleaded that they relied on those representations. There's been no evidence submitted by the Pierce's in this case what they relied on. The Pierce's haven't filed any declarations. And it's important to note, this is a Rule 12b1 dismissal for lack of subject matter jurisdiction, which actually opens the door for ample discovery. And in this case, the Pierce's didn't produce any evidence that they followed the facts of the Ilgen case. And the Ilgen case is not the facts that we have here. And as a matter of fact, in the complaint that was filed in this case, there are no allegations regarding reliance by the Pierce's. And that also goes... There was no allegation that the way that State Farm markets induce people to buy State  There was no allegation in the complaint that the Pierce's relied on it. And it's very specific. And that would have enabled them to come back with their own affidavits and said, we relied. They didn't do that. So in our case, with a 12b1 motion to dismiss, the court decided to permit a discovery. And even at one point, the district court judge, when they wanted to amend their last time, issued an order permitting them to amend, saying, one final note with regard to prejudice, I am not inclined to say discovery pending the resolution of the forthcoming motion to dismiss, but I'm inclined to limit it because discovery in this case has been incredibly burdensome. So there was an ample record under this court's standard in Kennedy that for a 12b1 motion to dismiss on a factual record, once discovery is opened up and they're given ample opportunity, they have the opportunity to submit evidence. And they didn't submit any evidence that resembled anything like the Ilgen case. So going back to my argument, the issue is that there's no dispute that the Pierce's there is no dispute that they actually received a refund for their premium. There was no dispute that they paid their premium to State Farm Florida. And that's important because in paragraph 17 of the complaint, they allege that the entity that realized the revenue from their premium payment was State Farm Florida, no other entity. So the appeal actually advocates for mutually exclusive theories. On the one hand, they say our insurer was State Farm Mutual. On the other hand, our insurer was State Farm Fire. Neither one of those reconciled with each other. So we have a moving target here. And basically what's going on is that there's just an effort here to try to get a nationwide class action where this is really only a dispute between two Florida insurers and their Florida insurance company. And if anything, they're not being denied their day in court. They could take this up in a Florida state court with a dispute with State Farm Florida. And in fact, they could try a class action. I'm not saying that it would work, but they have every right to go to a Florida court as Florida insurers against a Florida insurer and go to a Florida state court and try a class action there. Let's assume for the sake of argument and for this question that we agree that State Farm Mutual and the same would fall true for State Farm Fire. So we're left with State Farm Florida. And now we have to deal with how the district court then dealt with this remaining claim. But in Wright, didn't he say that the only reason for dismissing for lack of jurisdiction due to post-certain events in a CAFA suit is that the claims relating to CAFA jurisdiction were frivolous? It also says in there, and we didn't argue anything about frivolity. We weren't seeking sanctions. But it also says in Wright, and this is where they misinterpreted that case, that it depends on what the allegations are in the last amended complaint. They relied in their papers on removal cases, which Wright says you don't follow. Wright says you follow what the last complaint was. The last complaint they filed was based on all of that discovery they took. So the court took all of that discovery that they submitted and we submitted and made the court's decision. So I don't think there needs to be a finding of frivolity. Under the Kennedy standard under 12b-1, both sides put on their evidence and the court made its decision. The burden was on them to substantiate their jurisdictional argument. And we're not going to argue that it was frivolous. We think it is frivolous and we think it's not well taken and it's not well founded. But I think that the district court's decision was sufficient to find that the district court did not have subject matter jurisdiction and dismissed it. And then they can take it from there. If they want to take the dispute somewhere else, they can do that. Now it's also important to put all of this in context because there are very specific standards applicable to insurance companies that were overlooked by the plaintiff here. And I keep on referring to these as shell companies. There is a very sophisticated network of legal principles that derive from the National Association of Insurance Commissioners which has formulated a model act which numerous states including Florida and Illinois have adopted. And under the model act, insurance companies are allowed to use affiliated companies. The parent companies are allowed to provide services to affiliated companies. And in fact, the Florida legislature has approved that process where an insurance company operating in Florida can rely on its parent for support services. And that's cited in our papers. And also, I found very instructive the amicus brief filed by the American Property and Casualty Insurance Association and others that walk through the process of how the insurance company affiliation system works under the model act which is adopted in Florida. And we also put in our papers a very painstaking argument regarding that on regulatory filings, because the Florida Office of Insurance Regulation has to sign off on these forms. And the only approval that was given to issue this form in the state of Florida was to State Farm Florida. And it's irrefutable, but that's what happened here. So we put in the record the evidence that the State Farm Florida personal articles policy that they're suing under was a State Farm Florida filing. And the only State Farm Florida was authorized to use it in the state of Florida. And that would get to your point of if we open the floodgates, you know, by saying that the parent company that isn't writing or an affiliated company that isn't writing in the state of Florida would be subsumed within this, then it would open up the floodgates which would undo a lot of what the model act is intended to avoid. And it's highly regulated in this industry. And I'll also point out that in our papers below, we did cite to the Florida statute under the Florida Insurance Code that says that every policy shall specify the names of the parties to the contract. So that's Florida statutory law. And it's very important. That is Florida Statute 627.413, subsection 1A. And the only entity that has its name in this policy is State Farm Florida. So under Florida statutory law, the only insurer under this policy is State Farm Florida. Because the logo doesn't count. Because the logo is just a brand. It just says State Farm. It doesn't even say State Farm Mutual. And we cited lots of case law in our papers that even in the insurance context, the use of logos on policies is well accepted in the industry and it doesn't bring other entities into the fold within the insurance policy. So use of the logo is insufficient to drag people in. And that gets to the mobile case that was discussed before. Even though that wasn't an insurance case, it's a basic principle that use of logos is insufficient to bring another entity into the insurance policy. Now also, on the parent agency issue, going back to the insurance policy, the parent agency back to the State Farm, there's two things that they didn't put in their complaint and I hinted at it before. And that is the agency argument that's in there doesn't say that the Pierces relied on anything from State Farm Mutual, which they would have to do. And they also do not allege that they changed their position in reliance on it. They brought the policy. So there's no allegation. And they really can't make that allegation. And they could have, as I said, put in their own evidence, but they failed to do so. And so the case law that we've cited on that has the required elements to prove a claim for a parent agency, which they've avoided. They claim they've argued it in their motion to dismiss papers, but that actually belonged in their complaint and there was no allegation of a parent agency in their complaint. Right. So on the unjust enrichment argument, that was also correctly dismissed because one, in paragraph 17 of the complaint, it says that the entity that received the premium payment was State Farm Florida. So by their own allegation, State Farm Mutual was not enriched. It was State Farm Florida that received the premium payment. And also they're misapplying the case law. I read in their papers where they're saying that they believe that the case law we relied on is implicitly overruling prior Florida State Court appellate decisions. And I read them more closely, and what it's saying in the later decisions is they're distinguishing those later decisions from the prior decisions. And what the plaintiffs here overlook is the older decisions rely on the principle that if two different plaintiffs go after an entity and seeking unjust enrichment, a finding of express contract wouldn't bar it. However, for example, in the Peoples case, which is a Florida D.C. case, they explain why they're not overruling their prior precedent. What they're saying is that when the same entity gets express contract against one entity, they can't now go after other people for the same debt. So the Peoples case made clear that we have the same plaintiff here, the Pierces. They have a contract with State Farm Florida. It doesn't follow that they can go after State Farm Mutual for unjust enrichment because there already is a contract with another entity. And it's the entity they paid their money to. So under the Peoples case, that explains thoroughly why they're misreading the case law on that issue. I noticed that my time is running out. And a few other things that had come up earlier when the plaintiffs and the appellants went, they did start arguing that a contract has to have an exclusion in it that says that who the contracting parties aren't. I don't remember seeing that in their papers. I haven't seen any case law where they cited that says that parties have to exclude themselves from a contract. I don't know how you could possibly even do that because you wouldn't know where to stop ending parties that aren't parties to the contract. So I don't believe that's supported in their papers anywhere. And that's a new standard that I heard for the first time today. Now, I did have some other things to go over, but I don't know if you have any questions. My time is up. Thank you, Mr. West. Thank you. Mr. Weinstein, you have five minutes. So, if a counsel has said that your reliance on Almerico is misplaced, would you address that issue, please? Yes, Your Honor. That's what I brought up the computer for. He said that it only relies on the statute. Here's what the Florida Supreme Court said. Florida case law provides that an insurer may be held accountable for the actions of those whom it cloaks with an apparent agency. Further, a review of the case law on agency indicates that evidence of indicia of agency may be demonstrated if the insurer furnishes an insurance agent or agency with any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance. That last portion was quoting the statute, but it was also making clear that the statute is being aligned with Florida case law. It does not exclusively rely on the statute. That's a misreading. So, it cites the statute, but then it also cites Nelly and Casualty Company, the D.A. Morrison Construction, and it says, in that case, we found an agency relationship based on the evidence the insurer gave blank forms, blank applications, a seal of the corporation and stationery with the corporate name to the agent. In that case, the insurance company also allowed the agent to execute and deliver bonds and collect premiums and generally held him out as an agent without restriction on his authority. How is that final sentence about the agent, the principal was holding him out as the agent and generally allowing him without restriction? I think the same thing applies here by giving them the forms and allowing them to go out and collect insurance policies with the name of State Farm and not placing any notice to anyone that there's a difference between the two and that when you're contracting with State Farm Florida, you are also getting StateFarm.com and the same entities there. If anything, this is a question that deserves discovery and a fact finder. It should not be dismissed outright, especially on the basis of a misreading of Florida law that it's never allowed. That's basically what the district court said, clearly in conflict with El Merico. I need to correct a few things that opposing counsel said. In terms of discovery, I mean, opposing counsel said that you all engaged in a significant amount of discovery. District court didn't find that more discovery would aid you, so what more would you want? Well, that's what I wanted to correct. This was not a 12B1 dismissal, it was a 12B6 dismissal. 135 at 3, 190 at 3 are the parts of the orders where the court said it's a 12B6 dismissal, not 12B1. The discovery happened because they moved to stay discovery while they filed a motion to dismiss. We engaged in some limited discovery. They objected to a lot of the discovery. We were going to have some hearings to compel discovery. Those got short-circuited when the court dismissed the case. So this was not a 12B1 dismissal for most of the claims. It was a 12B6. He says it's a moving target, but that's because we had these dismissals based on clear misreadings of Florida law where we were trying, we first pled against mutual. The court said there's no agency theory at all in Florida law. That's clearly wrong. And now they're pointing out, they're saying, well, we should maybe allege more specifically that people relied on the contracts or their representations. That's the sort of missing allegation that should be dismissed without prejudice, allowing us to amend the complaint. But dismissing it with prejudice saying never apparent authority ever is a misreading of Florida law, and that's not a fair way to resolve the case. On, let's see, the jurisdictional reading as to State Farm Fire, it's very clear from the district court's order. The district court says with the dismissal of State Farm Fire, this lawsuit is now between Florida and the plaintiffs, and that's why it found the amount of controversy to be missing. If you read the district court, and that's 190 at 7, if you read the district court's order both there and the prior order, it clearly uses the word now. It says now that I've dismissed the other entities, this is only between Florida and Florida plaintiffs, and that's why the amount of controversy falls below. He never makes a determination, and they never put on evidence regarding the amount of controversy with State Farm Fire and State Farm Mutual. The other side talks about the insurance scheme that exists in Florida. They never argue that it's preemption, that somehow Florida case law and Florida common law is preempted because they can't possibly meet that standard. So the scheme that exists in Florida for allowing forms to be used for policyholders does not say that common law ideas of breach of contract and agency do not apply. And finally, the fire claim is not agency. Remember, the fire claim is based on the signature block, the clear language of the contract. This company can only mean one company, State Farm Fire. They could have written the contract differently. They didn't. State Farm Fire is bound by the contract. And finally, he referenced paragraph 17. Paragraphs 67 to 68, 17, 31, 34, 53 to 55, in the first amended complaint, all discuss the benefit that State Farm Mutual received. And 17 itself says that State Farm Mutual received a benefit. So it's not true that only State Farm Florida did. Thank you. Thank you both. We have your case under advisement, and we are going to recess until tomorrow morning. All rise. Thank you.